



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. R. S. Wyche
County Auditor
Gregg County
Longview, Texas

Dear Sir:

Opinion No. O-925
Re: Construction of House Bill 817,
46th Legislature, amending Art-
icle 6869, as amended by Acts
of 1929, 41st Legislature, Ch.
113, to be known as Article
6869b.

Your request for an opinion from this department
as contained in your letter dated June 1, has received our
attention. You request our interpretation of the above
mentioned act, particularly with reference to the compen-
sation of deputies as affected by the use of the language
"such number to include court bailiffs and jailers, and
said deputies to receive the compensation now allowed by
law." The last three paragraphs of your letter read as
follows:

"In the first place, there is no such term
as court bailiffs. The sheriff usually designates
one of his regular deputies to wait on court.
Article 1041 C.C.P. provides for the payment of
jailers. Therefore, as to what pay is to be pro-
vided for court bailiffs and jailers is confusing
since court bailiffs has reference to no known
officer. One can not assert that the term meant
grand jury bailiffs for in this county the grand
jury bailiffs are appointed by the district judges.

"Second, if all fourteen deputies are to be
used and all are to be regular deputies, including
jailers, will each such deputy be entitled to and
have the power and authority to arrest a citizen?
Since no provision is made here for a sheriff's
matron as provided in article 1041 C.C.P., what
would be the pay of a matron if appointed by the
sheriff in this county?

"Third, since this act provides that same
shall take effect immediately upon being signed



Hon. R. S. Wyche, Page 2

by the Governor, when does or when did the
bill become a law?"

House Bill 817, Acts of 1939, 46th Legislature,
being an act amending Article 6869, Revised Civil Statutes,
1925, as amended by the Acts of 1929, 41st Legislature,
First Called Session, Ch. 113, Section 1, by adding a new
section thereto, to be known as Article 6869b, with Section
2 thereof containing an emergency clause, provides:

"Article 6869b. Provided that in counties
having a population of less than twenty thousand
(20,000), according to the last preceding Federal
Census, and having a property valuation in excess
of One Hundred Million Dollars ($100,000,000),
according to the approved State and County tax
rolls for the preceding year, the sheriff, in the
manner now prescribed by law, shall have the au-
thority to appoint not to exceed fourteen (14)
deputies, said number to include Court bailiffs
and jailers, and said deputies to receive the
compensation now allowed by law."

Section 2 of the above act contains the emergency
clause, which reads as follows:

"Sec. 2. The fact that counties having
rapid oil field development, increased criminal
activities, and several full-time District Courts
have been compelled to employ additional Court
bailiffs and jailers, and the question is being
raised that these bailiffs and jailers must be
considered as deputies in determining the number
of employees, thus hampering the law enforcement
activities, create an emergency and imperative
public necessity requiring that the Constitutional
Rule providing for the reading of bills on three
several days in both Houses be suspended, and said
rule is hereby suspended, and this Act shall take
effect immediately upon being signed by the Gover-
nor, and it is so enacted."

House Bill 817 makes no reference in its provisions
to compensation payable to the deputies and being an amend-
ment to Article 6869, would not affect or broaden the scope

of that provision of the amended article which provides that if in the opinion of the commissioners' court fees of the sheriff's office are not sufficient to justify the payment of salaries of such deputies, the commissioners' court shall have the power to pay the same out of the General Fund of the county.

Article 1041, C. C. P. 1925, as amended, with reference to the compensation allowed for each guard or matron provides that each matron necessarily employed in the safekeeping of prisoners, shall be allowed Two Dollars and Fifty cents ($2.50) for each day. This rate is specified to be paid in all counties of less than forty thousand inhabitants, and in such counties, the article makes no provision for an allowance for the services of jailer. - Cooper et al v. Johnson County, 212 S. W. 528; State v. Carnes, 106 S. W. (2) 397.

This department in our opinion 0-122, found in Book I, Volume I, page 20 of the monthly reports of the Attorney General, has held that under Article 16, Section 40 of the Constitution of Texas, a deputy sheriff would not be authorized to serve and accept pay as bailiff to the grand jury. You are, therefore, correct in your conclusion that the term "court bailiff" as used in House Bill 817, cannot and does not include such bailiffs as authorized to attend upon the grand jury under the provisions of Article 367 and 367b, C. C. P., 1925.

Article 3933, as amended, Revised Civil Statutes, 1925, provides that for every day the sheriff or his deputies shall attend court, he shall receive four dollars ($4.00) to be paid by the county for each day that the sheriff by himself or a deputy, shall attend said court. The statutes do not provide for any such officer as "court bailiff". Certain duties, however, are imposed upon the sheriff, among which is to constantly attend upon juries or provide a deputy for such service. In this respect, the duties imposed by statute necessarily require attendance upon the court for which a fee is provided and in which capacity the sheriff or his deputy assigned would be considered as a "court bailiff". Your attention is directed to Article 44, C. C. P. 1925, which reads as follows:

> "Whenever a duty is imposed by this Code upon the sheriff, the same duty may lawfully be performed by his deputy. When there is no sheriff in a county, the duties of that office as to all proceedings under the criminal law, devolve upon the officer who, under the law, is empowered



to discharge the duties of sheriff, in case
of vacancy in the office."

Article 6869, Acts of 1929, 41st Leg., Ch. 113,
to which the House Bill in question is an amendment, pro-
vides as follows:

"Sheriffs shall have the power, by writing,
to appoint one or more deputies for their res-
pective counties, to continue in office during
the pleasure of the sheriff, who shall have power
and authority to perform all the acts and duties of
their principals; and every person so appointed
shall, before he enters upon the duties of his
office, take and subscribe to the official oath,
which shall be indorsed on his appointment, to-
gether with the certificate of the officer admin-
istering the same; and such appointment and oath
shall be recorded in the office of the County
Clerk and deposited in said office. The number
of deputies appointed by the sheriff of any one
county shall be limited to not exceeding three
in the Justice precinct in which is located the
county seat of such county, and one in each Jus-
tice precinct, and a list of these appointments
shall be posted up in a conspicuous place in the
Clerk's office. . . ."

Article 3902, as amended, pertaining to the appoint-
ment of deputies, provides:

"Whenever any district, county or precinct
officer shall require the services of deputies,
assistants or clerks in the performance of his
duties he shall apply to the County Commissioners'
Court of his county for authority to appoint
such deputies, assistants or clerks, stating by
sworn application the number needed, the position
to be filled and the amount to be paid. Said
application shall be accompanied by a statement
showing the probable receipts from fees, com-
missions and compensation to be collected by
said office during the fiscal year and the pro-
bable disbursements which shall include all sal-
aries and expenses of said office; and said court
shall make its order authorizing the appointment
of such deputies, assistants and clerks and fix
the compensation to be paid them within the limi-

tations herein prescribed and determine the
number to be appointed as in the discretion
of said court may be proper; provided that in
no case shall the Commissioners' Court or any
member thereof attempt to influence the appoint-
ment of any person as deputy, assistant or clerk
in any office. Upon the entry of such order
the officers applying for such assistants, de-
puties or clerks shall be authorized to appoint
them; provided that said compensation shall not
exceed the maximum amount hereinafter set out.
The compensation which may be allowed to the
deputies, assistants or clerks above named for
their services shall be a reasonable one, not
to exceed the following amounts:

"1. In counties having a population of
twenty-five thousand (25,000) or less inhabi-
tants, first assistant or chief deputy not to
exceed Eighteen Hundred ($1800.00) Dollars per
annum; other assistants, deputies or clerks not
to exceed Fifteen Hundred ($1500.00) Dollars
per annum each."

In the case of Trammel vs. Shelton, 45 SW 319, the
relevant provision of Article 6869, substantially the same
as enacted in 1889, which grants authority to the sheriff to
appoint deputies and limits their number, was held to be
directory. Such authority as was by this article and pre-
viously at common law given to the sheriff, was by general
law superseded and vested in the commissioners' court under
the provisions of Article 3902, supra. Such a construction
as would harmonize the two articles, 6869 and 3902, supra,
should be given with the latter article controlling. While
said Article 6869 seeks to limit the discretion to be exer-
cised by the sheriff, we cannot say that such article would,
as a matter of law, restrict the power of the commissioners'
court under Article 3902, as amended, should the facts war-
rant the necessity for the appointment by the sheriff of
more deputies than would be permitted under the provisions
of Article 6869.

In view of the construction placed upon the arti-
cle amended by the bill in question, it necessarily follows
that House Bill 817 should be construed with Article 3902
as amended. Our interpretation of the act is that "deputies"
include each deputy and jailer, inclusive of those assigned

and who may attend as "bailiffs to the court", and who may attend the duties of "jailer", who is appointed as a regular deputy and is authorized under the provisions of Article 3902, as amended.

In answer to your first question, you are advised that in the opinion of this department, House Bill 817, Acts of the 46th Legislature, Regular Session, amending Article 6869, to be known as Article 3896b, is to be construed with Article 3902, Revised Civil Statutes, 1925, as amended, with said latter article controlling. House Bill 817 does not pertain to nor in anywise affect the salary or compensation of deputies as provided to be fixed under the provisions of Article 3902, as amended. The term "deputies" as used in the bill signifies and is inclusive of such deputies assigned to the court as "court bailiffs" and such deputies, if any, assigned to and who may discharge the duties of "jailers".

In answer to your second question, you are advised that in the opinion of this department House Bill 817, 46th Legislature, authorizes any one of the fourteen deputies named, including jailers, who is duly appointed by the sheriff as a regular deputy and who is authorized under the provisions of Article 3902, as amended and qualifies as such, to perform the duties of sheriff. The compensation to be paid a matron in counties of less than forty thousand inhabitants is controlled by the provisions of Article 1041 C. C. P. as amended, being fixed at Two Dollars and Fifty Cents ($2.50) per day.

With reference to your third and last question propounded, we examined the original House Bill 817 as filed in the office of the Secretary of State and find that same was passed by over a two-thirds majority of both houses; filed in the Governor's office on March 28, 1939, and in the office of the Secretary of State, without the Governor's signature on the 7th day of April, 1939.

Article 3, Section 39 of the Constitution of Texas provides:

"No law passed by the Legislature, except the general appropriation act, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted, unless in case of an emergency, which emergency must be expressed in a preamble or in the body of the act, the Legislature shall, by a vote of two-thirds of all the members elected to each House, otherwise direct; said vote to be taken by yeas and nays, and entered upon the journals."

Hon. R. S. Wyche, Page 7

Article 4, Section 14 of the Constitution of Texas in part provides:

"Every bill which shall have passed both houses of the Legislature shall be presented to the Governor for his approval. If he approve he shall sign it; but if he disapprove it, he shall return it, with his objections, to the House in which it originated, which House shall enter the objections at large upon its journal, and proceed to reconsider it. . . . If any bill shall not be returned by the Governor with his objections within ten days (Sundays excepted) after it shall have been presented to him the same shall be a law, in like manner as if he had signed it, unless the Legislature, by its adjournment, prevent its return, in which case it shall be a law, unless he shall file the same, with his objections, in the office of the Secretary of State and given notice thereof by public proclamation within twenty days after such adjournment. . . ."

It will be noted that the only provision as the effective date of the act is contained in the emergency clause which reads that the act "shall take effect immediately upon being signed by the Governor, and it is so enacted." Before any such bill could become effective as a law, the Governor of the state is given a constitutional right to approve, disapprove, or permit a bill to become a law without his signature.

Under the provisions of Article 4, Section 14 above set forth, if a bill remains in the hands of the Governor without action for ten days from the date of its presentment to him, such bill carrying an emergency clause becomes a law at the expiration of ten days, (Sundays excepted) provided there is expressed stipulation in the bill that it shall become effective upon its passage.

In order to give effect to the intention of the Legislature in the passage of this bill by an emergency clause, we construe the word "immediately" as being synonymous with the use of such words as "upon its passage" or "from and after its passage" or words of like import.



In answer to your third question, it is the opinion of this department that House Bill 817 became effective on the 8th day of April, 1939.

Trusting the above answers your questions, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By          Wm. J. R. King
                    Assistant

WmK APPROVED JUL 10, 1939

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN